UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PATRICK MURPHY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | Case No. 3:09-cv-05619-KLS<br><br>ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below defendant's decision to deny benefits should be reversed, and this matter should be remanded thereto to conduct further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 26, 2003, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of January 1, 1999, due to severe back pain and spasms, as well as

an inability to stand, walk, bend, sit or sleep a full night. Tr. 18, 66-68, 70-72, 89. Both applications were denied upon initial administrative review and on reconsideration thereof. Tr. 18, 37, 40, 48, 857. A hearing was held before an administrative law judge ("ALJ") on March 19, 2007, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 859-902.

On June 21, 2007, the ALJ issued a decision, in which she determined plaintiff to be not disabled. Tr. 18-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 11, 2009, making the ALJ's decision defendant's final decision. Tr. 8; 20 C.F.R. § 404.981, § 416.1481. On October 5, 2009, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See (ECF #1). The administrative record was filed with the Court on December 16, 2009. See (ECF #10). The parties have completed their briefing, and thus this matter is now ripe for review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an outright award of benefits, because the ALJ erred in: (1) evaluating the medical evidence in the record; (2) finding that none of his impairments met or medically equaled a listed impairment; (3) assessing his credibility; (4) evaluating the lay witness evidence in the record; and (4) finding him to be able to return to his past relevant work. Plaintiff further argues evidence in the record supports a finding that he is incapable of performing other jobs existing in significant numbers in the national economy and thus disabled on that basis as well. Defendant agrees the ALJ erred in evaluating the medical and lay witness evidence in the record, and therefore in finding plaintiff to be not disabled, but argues this matter should be remanded for the purpose of conducting further administrative proceedings. For the reasons set forth below, the Court agrees that while the ALJ erred in finding plaintiff to be not disabled, this matter should be remanded to defendant

to conduct further administrative proceedings.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her, but rather must only explain why "significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; see also Tonapetyan, 242 F.3d at 1149.

A. Dr. Pahlke

Plaintiff and defendant agree the ALJ failed to provide legally sufficient reasons for not adopting the mental functional limitations assessed by Carol A. Pahlke, Ph.D. With respect to Dr. Pahlke, the ALJ found in relevant part as follows:

> . . . Carol A. Pahlke, Ph.D., treated the claimant . . . on two occasions: between June 30, 2003, and September 15, 2003 (Exhibit 21F: 14 – 20), and again between August 21, 2006, and January 23, 2007 (Exhibit 21F; 2 – 13). Interestingly, although she diagnosed the claimant with depression and PTSD, she never offered an opinion concerning his functionality.

Tr. 26. As both parties point out, however, Dr. Pahlke did provide such an opinion in a mental impairment questionnaire she completed in late February 2007, in which she found plaintiff to be unable to perform a number of functional tasks and activities, gave him a global assessment of functioning ("GAF") score of 40,[1] stated he would be "[u]nable to work due to [his] experience of physical pain," and assessed him as being markedly restricted in his activities of daily living, as having moderate difficulties in maintaining social functioning and extreme difficulties in maintaining concentration, persistence or pace, and as having experienced repeated episodes of extended decompensation. Tr. 803-08.

Because such limitations likely would have a significant impact on plaintiff's ability to perform work-related activities, Dr. Pahlke's assessment thereof constitutes significant probative evidence the ALJ was required to consider. The ALJ's failure to do so, therefore, was improper.

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32).

Plaintiff argues Dr. Pahlke's assessment supports a determination that he is disabled at step three of the sequential disability evaluation process.[2] Not all of the medical opinion source evidence in the record, though, supports the level of impairment noted by Dr. Pahlke, including that from Lolita Velmer, M.D., discussed below, although Dr. Velmer did assess a similar GAF score. See Tr. 318-22, 329-47, 350-53, 508-21.

The issue of whether any of plaintiff's mental impairments meets or medically equals a listed impairment, therefore, is one much more appropriately addressed by defendant on remand. Plaintiff argues as well that the ALJ erred in failing to include in his residual functional capacity assessment any of Dr. Pahlke's mental functional limitations.[3] See Tr. 22 (limiting plaintiff only to performing simple, routine, repetitive work, requiring only occasional general public contact). The Court agrees that given the ALJ's error in failing to discuss Dr. Pahlke's mental functional assessment, it is not at all clear the ALJ's assessment of plaintiff's RFC is completely accurate. For example, Dr. Pahlke found plaintiff would be unable to maintain regular attendance and be punctual within customary tolerances or complete a normal workday and workweek without any

---

[2] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step three of that process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the those listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 404.1520(d), § 416.920(d); see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If so, the claimant is deemed disabled. Id. The burden of proof is on the claimant, however, to establish he or she meets or medically equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098. "A generalized assertion of functional problems," furthermore, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

[3] If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four of that process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id. A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. An inability to work, however, must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also must discuss why "symptom-related functional limitations and restrictions . . . cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

interruptions from his mental health symptoms. See Tr. 806. On the other hand, again given that other medical opinion source evidence in the record contradict Dr. Pahlke's findings, it is unclear whether plaintiff should have been found disabled at step five.[4]

B. Dr. Velmer

In regard to the findings and opinions of Dr. Velmer referenced above, the ALJ found as follows:

> . . . Lolita Velmer, M.D., performed a consultative psychiatric examination of the claimant on June 21, 2003, diagnosing him with PTSD [posttraumatic stress disorder]. She opined he could perform simple, routine, repetitive work, some complex tasks, and even deal with the public, but suggested he might experience problems with attendance due to "intermittent disruptions" because of flare-ups of his PTSD. Curiously, she estimated his global assessment of functioning (GAF) to equal 35 to 40, which denotes a serious impairment in multiple areas of social and occupational functioning, and is entirely inconsistent with the rest of her report (Exhibit 8F). The undersigned accepts Dr. Velmer's diagnosis and will consider the limitations described in the body of her report, but must disregard her estimate of the claimant's GAF. . . .

Tr. 25-26. Plaintiff argues, and defendant appears to concede, that the ALJ erred when he failed to provide any specific reasons as to why Dr. Velmer's assessed GAF score and other functional limitations were "inconsistent with the rest of her report." See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (insufficient for ALJ to reject opinion of treating or examining physician by merely stating, without more, that there is lack of objective medical findings in record to support that opinion).

The Court agrees the ALJ erred here, and, accordingly, agrees with plaintiff that because

---

[4] If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). See Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000). At the hearing, the vocational expert testified that an individual who would miss two days of work per month would not be able to sustain competitive employment. See Tr. 901. Again, however, it is not clear that such a severe limitation is supported by the medical opinion source evidence in the record overall.

of this error, the ALJ's residual functional capacity assessment cannot be said to be reliable with any reasonable certainty. Once more, though, the Court disagrees with plaintiff that a finding of disability is warranted at step five in light of the vocational expert's testimony regarding missing days of work, given the conflicting medical opinion source evidence in the record, including the limitations assessed by Dr. Pahlke, which, as discussed above, were more severe, despite the low GAF scores these two sources both gave.[5]

C. Dr. Hamill

Plaintiff next challenges the ALJ's evaluation of the medical evidence in the record from his treating physician, John Hamill, M.D., which reads in relevant part:

> On May 14, 2004, Dr. Hamill wrote a memorandum responding to an unidentified party's request for a medical source statement, regarding the claimant's allegations of PTSD, arthritis and heart disease. Dr. Hamill stated [the] claimant did have PTSD but he was not getting psychiatric treatment. He further described the results of [the] claimant's March 2002 cardiac workup, which reflected a minimal (20%) lesion of one coronary artery with excellent heart function [he likely meant the claimant's left ventricular ejection fraction] of about 72%. Dr. Hamill opined [the] claimant's intermittent symptoms of angina – which respond well to nitroglycerine – would not be disabling. Finally, he discussed [the] claimant's "general arthritis". He wrote that [the] claimant reported significant disability from this, and that he had seen the claimant shopping in local stores using a "cart". On the other hand, Dr. Hamill described the objective medical evidence as pointing to "minimal degenerative disc disease", which was inconsistent with the claimant's complaints of pain. Finally, he noted episodes of tendonitis and epicondylitis, which responded well to steroids, and an episode of peroneal palsy which has resolved. Dr. Hamill did not provide a detailed residual functional capacity estimate, but did note the claimant walked with some apparent difficulty, and described his mental state as "a slow progressive decline" with "a continued perception of disability" (Exhibit 16F: 5, 6). On January 25, 2005, Dr. Hamill opined he did not think the claimant would be able to return to work in "any sort of manual labor capacity". He further

[5] It also should be noted that while Dr. Velmer did state that "regular work attendance might not be successful" and that one of plaintiff's problems was "regular attendance and maintaining regular hours at work," she did not actually opine that plaintiff would miss any work, or, if he did, that he would miss at least two days per month. Tr. 322. As such, again it is not clear the vocational expert's testimony regarding ability to maintain competitive employment if this amount of work were missed each month is supported by the substantial evidence in the record.

opined [the] claimant "should be able to work in a sedentary capacity" and recommended retraining (Exhibit 22F: 49).

Dr. Hamill completed a Physical Capacities Evaluation form, provided by [the] claimant's representative, on February 8, 2007. He opined [the] claimant retained the residual functional capacity to lift and carry up to ten pounds occasionally and up to twenty pounds rarely. He further opined that during an eight-hour day, [the] claimant could sit for two hours at a time for up to eight hours; and could stand or walk for up to thirty minutes at a time for a maximum of [sic] hour. Alternatively, Dr. Hamill opined [the] claimant could periodically alternate sitting and standing thirty minutes at a time for up to two hours during an eight-hour day. He wrote that [the] claimant should never bend, squat, crawl or climb, and was limited to only occasional overhead reaching. Lastly, Dr. Hamill opined [the] claimant would likely miss up to four days of work per month because of his pain and the fact that his "wife is often sick" (Exhibit 22F).

As a treating medical source, Dr. Hamill's opinions deserve serious consideration, because he has personally examined the claimant and has followed the course of the claimant's medical condition over a period of time. However, it is clear that Dr. Hamill relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. In the remarks section of the form he completed in February 2007 he wrote that "overall [the claimant] has been insistent for years in his report of pain and my observation of his function both in and out of the office". In fact, Dr. Hamill had occasionally seen the claimant using two canes or a scooter while shopping. He also described his observations of the claimant's pain behavior in the office. Yet he also commented on several occasions how the claimant's complaints were not consistent with his objective medical findings (an observation made by several other doctors), and reported that his staff had observed the claimant in town walking easily and without distress. As explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Likewise, this marked change in Dr. Hamill's opinion – in the absence of any documented decline in the claimant's condition – suggests he may have inadvertently stepped out of his role as an objective treating medical source and assumed the role of advocate. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

> Finally, Dr. Hamill merely completed a "fill-in-the-blanks" form and did not provide objective evidence to substantiate his opinion or even explain how [the] claimant's impairments limited his ability to lift and carry, to sit, stand and walk, to perform postural or manipulative tasks or to fulfill the basic mental demands of competitive, remunerative, unskilled work. The difficulty with this type of attorney-created, goal directed, check-the-box, fill-in-the-blank form is that while signed by a treating medical source, it contains no real description of medical findings and is merely brief and conclusory in form. . . .

Tr. 26-27.

Plaintiff argues the ALJ erred in ignoring Dr. Hamill's 2004 opinion regarding his need to rest secondary to his angina. See Tr. 359 ("[Plaintiff's angina] is reasonably expected to occur three or four times a month and require an hour to rest at a time."). While it is true that the ALJ did not address this limitation specifically, the Court finds any error in this regard to be harmless, because, as noted by the ALJ above, Dr. Hamill subsequently opined in late January 2005, that plaintiff "should be able to work a sedentary" job. Tr. 615. Dr. Hamill, however, failed to note any issue plaintiff had with respect to needing to rest due to angina. In other words, nothing in that later treatment record indicated Dr. Hamill still felt plaintiff required such rest. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

Plaintiff also challenges the ALJ's rejection of Dr. Hamill's most recent medical source opinion on the basis of lack of objective medical support in the record, pointing to evidence of significant degenerative joint disease and other similar findings. But the mere existence of an impairment, such as degenerative joint disease in this case, is insufficient to establish significant, let alone disabling, work-related limitations, unless the objective findings indicating the presence of that impairment relates directly to such limitations. That is, just because a claimant may have an underlying physical impairment does not mean he or she has any actual functional limitations

stemming therefrom. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Here, though, Dr. Hamill made no such direct connection – or even mentioned any specific objective findings of degenerative joint disease or other diagnosed medical impairment – in the physical capacities evaluation he completed. See Tr. 567-68.

Plaintiff's argues the ALJ incorrectly found Dr. Hamill's physical capacities evaluation findings to be inconsistent with the rest of the medical record regarding his physical impairments and limitations, noting David Deutsch, M.D., a non-examining, consulting physician, had limited him to performing only sedentary work as well. But the limitations found by Dr. Deutsch were assessed in early March 1999, well before the relevant time period in this case. See Tr. 282-89. That is because while plaintiff, as noted above, originally alleged an onset date of disability of January 1, 1999, he amended that date at the hearing to January 1, 2002. See Tr. 18, 864-65. In addition, there is nothing in the assessment form Dr. Deutsch completed to indicate his findings concerned any period of time other than the current one.

Lastly, it should be noted that the ALJ provided two additional valid reasons for rejecting Dr. Hamill's most recent assessed limitations. As noted above, the ALJ pointed out that Dr. Hamill "relied quite heavily on the subjective report of symptoms and limitations provided by" plaintiff, and, as discussed below, the ALJ properly discounted plaintiff's credibility. Tr. 27; see also Tonapetyan, 242 F.3d at 1149 (medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility may be disregarded); see also Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (same). Further, the ALJ correctly noted that the physical capacities evaluation report completed by Dr. Hamill was on a check-the-box form. Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). Accordingly, the Court

further rejects plaintiff's argument that he should have been found disabled at step five based on the evidence provided by Dr. Hamill contained in the record.

II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. The Court also may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. In addition, that some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part on the basis that his alleged symptoms "are only partially supported by" the medical evidence in the record. Tr. 24. This is a valid basis upon which to discount a claimant's credibility. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). As noted above, the ALJ did not err in rejecting the objective medical evidence in the record indicating plaintiff had more severe physical functional limitations than those contained in the ALJ's RFC assessment. See Tr. 22 (residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, and to sit, stand and walk for up to eight hours in eight-hour workday).

The ALJ next discounted plaintiff's credibility in part because the treatment he received "for his allegedly disabling symptoms" was "essentially routine and/or conservative in nature," and had been "generally successful in controlling those symptoms." Tr. 24; see Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation); see also Morgan, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (same). Plaintiff argues this shows the ALJ misunderstood that conservative treatment is generally employed to treat degenerative disc disease. See (ECF #15, p. 13 (citing Glomski v. Massanari, 172 F.Supp.2d 1079, 1085 (E.D. Wis. 2001)).

In Glomski, the district court stated that the ALJ's "discussion of non-operability and conservative therapies" may have indicated "a misunderstanding of degenerative disc disease,"

which the court went on to comment was "generally treated with conservative therapy and only" resulted "in an operation in 2% of its sufferers." Id. (citing Scientific American at 53 (August 1999)). It is unclear, however, exactly what evidence the Scientific American article the district court cited – which, it also should be noted, is from 1999 – is based on, or the objective medical evidence behind its findings. That is, this Court lacks sufficient expertise in the appropriate field to make that determination itself. Nor does the Court find the fact that degenerative disc disease may "generally" be treated conservatively, necessarily mean such is the case here, particularly as there is nothing to indicate any of plaintiff's own treatment providers, or any of the other medical sources in the record, necessarily believed that to be the case.

Accordingly, the Court finds the district court's statement on the matter in Glomski to be unpersuasive, and therefore declines to adopt or follow it, given that, as noted above, the Ninth Circuit has recognized that evidence of a lack of more serious medical treatment may be used as a proper basis for discounting claimant credibility. The ALJ discounted plaintiff's credibility as well for the following reasons:

> . . . [A]lthough the claimant has described daily activities that are fairly limited, three factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainly. Second, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to his medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Finally, the record reflects that [the] claimant has engaged in daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, the claimant has reported to his treating medical sources since his alleged onset date that he does woodworking and crossword puzzles, watches television and enjoys bicycling. He also testified at the hearing he continues to bicycle for exercise up to eight blocks at a time and occasionally mows his front and back lawns. Finally, despite his allegations of symptoms and limitations preventing all work, the record reflects that [the] claimant has traveled out of state in a pickup truck to Wyoming since the alleged onset date. These activities tend to reflect that the claimant's daily

> activities have, at least at times, been somewhat greater than [the] claimant has generally reported, and suggest that he may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis. . . .

Tr. 24-25. Plaintiff argues the ALJ erred here by failing to making any finding that his activities of daily living consumed a substantial part of his day or that they could be easily transferred to a work environment.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. See Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id. The Court agrees that the record fails to show plaintiff engaged in the above cited activities for a substantial part of his day or that they are necessarily transferrable to a work setting.

On the other hand, as noted above, the ALJ also is permitted to consider other "ordinary techniques of credibility evaluation," such as prior inconsistent statements, other testimony that "appears less than candid" and the observations of physicians and other third parties regarding the nature, onset, duration and frequency of the claimant's symptoms. Smolen, 80 F.3d at 1284. To that extent, the Court finds the ALJ was not necessarily remiss in finding, for example, that plaintiff's ability to ride his bicycle and enjoy doing so, mow his lawn and do woodworking and crossword puzzles, reflects an ability to engage in daily activities, which "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 24. In addition, also as noted by the ALJ, Dr. Hamill's staff had observed plaintiff "in town walking easily and without distress." Tr. 27; see also Tr. 403 (reporting staff member had spotted plaintiff

"trucking along" at "good clip" in no acute distress while walking across bridges in town).

Lastly, the ALJ discounted plaintiff's credibility in part for the following reasons:

> . . . [T]he claimant's responses while testifying were evasive or vague at times, and left the impression he may have been less than entirely candid. He also tended to minimize his activities of daily living (i.e., work around the house and how long he had been riding a bicycle), and exaggerated the number of times he experienced heart problems. This behavior may not have been the result of a conscious intention to fabricate or to mislead. Nevertheless it suggests the information provided by [the] claimant may not be entirely reliable.

Tr. 25. Plaintiff has not challenged this basis for the ALJ's adverse credibility determination. In addition, an ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); see also Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Further, inclusion of personal observations of the claimant in the ALJ's findings "does not render the decision improper," as long as the ALJ does not reject the claimant's subjective complaints "solely on the basis of" such observations. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986); SSR 95-5p, 1995 WL 670415 *2. Since the ALJ did provide other, valid bases for discounting plaintiff's credibility here as discussed above, the ALJ did not error in discounting it for this reason as well.

III. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

As noted by plaintiff, the record contains lay witness statements from plaintiff's friends and family detailing their observations of his symptoms and limitations. See Tr. 143-47, 228-31. In regard to those statements, the ALJ stated that:

> The undersigned also considered the written statements submitted by his witnesses. There is no reason to doubt their observations of the behaviors the claimant demonstrates, and the undersigned finds them to be generally credible. However, as they do not have medical and/or vocational expertise, their opinions are of limited value in establishing [the] claimant's residual functional capacity, or determining how the claimant's impairments affect his overall ability to perform basic work activities. Therefore, the undersigned cannot afford their testimony significant weight as additive evidence to support a finding of disability.

Tr. 25. Both parties agree the ALJ failed to provide adequate reasons for rejecting the statements of the above lay witnesses. Indeed, as noted above, the Ninth Circuit expressly has held that lay witness testimony "is competent evidence that an ALJ must take into account." Lewis, 236 F.3d at 511. While it may be true, furthermore, that lay witnesses are not qualified to give opinions on the ultimate issue of disability, the Ninth Circuit also has expressly held that the ALJ must consider the "observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). Accordingly, the Court also finds the ALJ erred in his evaluation of the lay witness evidence in the record.

IV. The ALJ's Step Four Determination

As noted above, the ALJ found plaintiff could return to her past relevant work, which did not require the ability to perform work-related activities precluded by his residual functional capacity. See Tr. 29. Also as noted above, plaintiff argues that the ALJ's finding at step four of

the sequential disability evaluation process here, should be reversed in light of the evidence in the record supporting a determination of disability at both step three and step five. Plaintiff has the burden at step four of the disability evaluation process to show he is incapable of returning to his past relevant work. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The Court agrees the ALJ's step four determination is not clearly supported by substantial evidence, given the ALJ's errors in evaluating the medical evidence in the record concerning plaintiff's mental impairments and limitations, in evaluating the lay witness evidence in the record and in assessing plaintiff's residual functional capacity.

## V. Remand for Further Administrative Proceedings Is Appropriate

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to the medical evidence in the record concerning plaintiff's mental impairments and limitations, the lay witness statements from his friends and family and plaintiff's residual functional capacity, it is appropriate to remand this matter to defendant for the purpose of conducting further administrative proceedings.

Plaintiff argues the medical opinion source evidence the ALJ erred in evaluating must be credited as true. It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). But where the ALJ is not required to find the claimant disabled on the crediting of evidence, this constitutes an outstanding issue that must be resolved, and therefore the Smolen test will not be found to have been met. See Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). In addition, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116. As discussed above, it is not exactly clear what plaintiff's residual functional capacity should be or whether he can perform his past relevant work or other jobs existing in significant numbers in the national economy, in light of the ALJ's errors addressed above. As such, applying the credit as true rule to the improperly evaluated medical opinion evidence would not be appropriate in this case.

It is also true as noted by plaintiff that where lay witness evidence is improperly rejected, that evidence may be credited as a matter of law as well. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (when lay witness evidence rejected by ALJ was given effect required by federal regulations, it became clear that claimant's limitations were sufficient to meet or equal

listed impairment). As noted by the Ninth Circuit, though, courts do have "some flexibility" in how they apply the "credit as true" rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Further, Schneider dealt with the situation where defendant had failed to cite any evidence to contradict the statements of five lay witnesses regarding the claimant's disabling impairments. 223 F.3d at 976. Such is not the case here. Accordingly, again the Court declines to apply the credit as true rule to the lay witness evidence in the record.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Accordingly, the ALJ's decision hereby is REVERSED and REMANDED for further administrative proceedings in accordance with the findings contained herein. Plaintiff requests that on remand defendant be ordered to complete the administrative proceedings and issue a new decision within 90 days, or be subject to an entry of judgment on the merits in plaintiff's favor. The Court, however, finds no valid basis for doing so, and thus it declines to grant plaintiff's request here.

DATED this 22nd day of December, 2010.

Karen L. Strombom
United States Magistrate Judge